GENEVIEVE MARCZAK, Plaintiff-Appellant, v. DREXEL NATIONAL BANK *et al.*, Defendants-Appellees.

First District (2nd Division) No. 1—88—0472

Opinion filed July 18, 1989.

642

Robert J. Pavich and Barry A. Spevack, both of Monico & Pavich, of Chicago, for appellant.

Thomas D. Allison and George W. Terrell, Jr., both of Cotton, Watt, Jones & King, of Chicago, for appellees.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Genevieve Marczak, appeals from the trial court's dismissal of her first amended complaint and the denial of her motion for leave to file a second amended complaint. She argues that the complaint sufficiently alleged defamation and that she was not precluded from recovery for unjust dismissal and intentional interference with a business relationship by the National Bank Act of 1864. 12 U.S.C. §24 (1982).

Plaintiff's first amended complaint was filed against Drexel National Bank (hereinafter the Bank) and John Colgan, Russ Ewert and Ann Nickel, who are officers of the Bank. Count I alleges defamation; count II alleges intentional interference with employment relationship; and count III alleges unjust dismissal. The complaint alleged that plaintiff began her employment with the Bank in 1965 as a clerk and, by January 1981, worked her way up to the position of assistant comptroller. In June of the same year, she was promoted to assistant vice-president and assistant controller. In October 1985, plaintiff received an employee termination report which stated in relevant part:

"Ms. Marczak did not perform up to the high standards expected of officers of the Bank. She had some problems getting along with her supervisors and other officers; at times she was uncooperative and did not have the Bank's best interest at heart; and she did recently refuse to perform one of the responsibilities of her position (petty cash)."

The report, signed by the individual defendants as officers of the Bank, also stated that plaintiff had received several prior verbal reprimands about her conduct.

Pursuant to defendants' section 2—615 motion (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), the trial court dismissed all three counts, finding: (1) there is no defamation *per se*; (2) there are insufficient allegations of malice; and (3) the actions are precluded by the National Banking Act (12 U.S.C. §24 (1982)). The court also denied plaintiff leave to file a second amended complaint, finding that it failed to cure the defects in the original and first amended complaint.

■■ ■ A trial court's power to allow amendments should be freely exercised in order that litigants may fully present their causes of action. (*Giannini v. First National Bank* (1985), 136 Ill. App. 3d 971, 988, 483 N.E.2d 924.) Factors to be considered in determining whether the trial court's discretion in permitting or denying amendments was properly exercised is whether the proposed amendment would cure a defective pleading; whether other parties would sustain prejudice or surprise by virtue of the proposed amendments; and whether previous opportunities to amend pleadings could be identified. (*Hoffman v. Nustra* (1986), 143 Ill. App. 3d 259, 265, 492 N.E.2d 981, *appeal denied* (1986), 112 Ill. 2d 575.) The court may consider the ultimate efficacy of a claim in passing on a motion to amend a pleading and may deny leave if the proposed amendment does not cure the defect. *Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488, 470 N.E.2d 1264, *appeal denied* (1985), 101 Ill. 2d 593.

I

██ ▌ Count I of the proposed second amended complaint alleges that the language used by plaintiff's employer in the employee termination report constitutes defamation *per se.* A defamation is the publication of anything injurious to the good name or reputation of another, or which tends to bring him or her into disrepute. (*Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337, 340, 207 N.E.2d 452.) The gravamen of an action for defamation is the damage to plaintiff's reputation in the eyes of other persons. (*Cowper v. Vannier* (1959), 20 Ill. App. 2d 499, 503, 156 N.E.2d 761.) Words are held to be defamatory *per se* where they impute: (1) commission of a criminal offense; (2) infection with a communicable disease; (3) inability to perform, or want of integrity to discharge duties of office or employment; and (4) prejudicing a particular party in his trade, profession or calling. *Catalano v. Pechous* (1978), 69 Ill. App. 3d 797, 805, 387 N.E.2d 714, *aff'd* (1980), 83 Ill. 2d 146, 419 N.E.2d 350, *cert. denied* (1981), 451 U.S. 911, 68 L. Ed. 2d 300, 101 S. Ct. 1981.

██ A defamation can never be *per se* if the words themselves are capable of an innocent construction. (*John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148; *Jacobs v. Gasoline Retailers Association* (1975), 28 Ill. App. 3d 7, 10, 328 N.E.2d 187, *appeal denied* (1975), 60 Ill. 2d 597.) Plaintiff's assertion that the Illinois Supreme Court repudiated the innocent construction rule is misplaced. In *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, "the Illinois Supreme Court has chosen not to discard the innocent construction rule, but to give it a special gloss." (*Harris Trust & Savings Bank v. Phillips* (1987), 154 Ill. App. 3d 574, 581, 506 N.E.2d 1370, *appeal denied* (1987), 116 Ill. 2d 554.) *Chapski* formally added reasonableness to such innocent constructions. See *Harris,* 154 Ill. App. 3d at 581.

In *Powers v. Delnor Hospital* (1986), 148 Ill. App. 3d 844, 499 N.E.2d 666, plaintiff based a defamation action on the following statement:

> "The continuous dissatisfaction *** [plaintiff] has indicated in both written communications and verbally, regarding personnell [*sic*] policies and procedures, as well as the continued friction and tension created within the department because of her expressed attitudes and feelings about the nursing profession and her peers make continued employment impossible." 148 Ill. App. 3d at 846.

The *Powers* court held that such statements were not actionable *per se* because they are directed to plaintiff's relationship with her co-

workers and do not pertain to her knowledge and ability to care for patients as a nurse. *Powers*, 148 Ill. App. 3d at 847.

■■ The test of defamation *per se* is whether the words "are so obviously and naturally hurtful that proof of injury is not necessary." (*Renard v. Columbia Broadcasting System, Inc.* (1984), 126 Ill. App. 3d 563, 566, 467 N.E.2d 1090, *appeal denied* (1984), 101 Ill. 2d 587, *cert. denied* (1985), 471 U.S. 1116, 86 L. Ed. 2d 259, 105 S. Ct. 2358.) In the case at hand, the trial court properly found that defendants are "not saying she is a bad banker, basically. What they are saying is, she had trouble getting along with other people in the bank and that it's disruptive *** the person doesn't fit into this organization, and, therefore, we can't make use of her services any longer."

As the words are capable of reasonable innocent construction, they are not actionable *per se*, and as the plaintiff has not alleged that the statement was defamatory *per quod*, the dismissal of count I of the first amended complaint and the refusal to grant leave to file a second amended count I is affirmed.

## II

Count II alleges intentional interference with employment relationship. The trial court dismissed this count as barred by the National Bank Act of 1864 (12 U.S.C. §24 (1982)) (hereinafter the Act) and for failure to properly allege that defendants acted with malice.

■■ The elements of intentional interference with employment relationship are: (1) reasonable expectation of continued employment; (2) knowledge of the business relationship by the interferer; (3) intentional interference; and (4) resultant damage. *Cashman v. Shinn* (1982), 109 Ill. App. 3d 1112, 1117, 441 N.E.2d 940.

■■ *Kemper v. Worcester* (1982), 106 Ill. App. 3d 121, 435 N.E.2d 827, *appeal denied* (1982), 91 Ill. 2d 570, held that the Act did not bar a bank officer from suing for tortious interference with employment relations. The court rejected the argument that the employee of the bank did not have a legitimate expectation of future employment because of the at-will nature of the employment imposed by the Act. The court held that an action could be had for tortious interference with an at-will employment relationship because until a contract is terminated, it is a subsisting relation which would presumably continue in effect. See *TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 1006, 380 N.E.2d 963, *appeal denied* (1978), 71 Ill. 2d 621 (where there is a malicious interference with an employment contract, it is immaterial whether it is for a fixed period or a contract terminable at will if both parties would have been willing to continue employment

for an indefinite time); *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 529, 441 N.E.2d 579, *aff'd in part, rev'd in part* (1984), 99 Ill. 2d 528, 459 N.E.2d 1332 (maliciously causing a breach of contract terminable at will is actionable).

In light of the foregoing, we find that count II is not barred by the Act. We must now determine whether the court properly found count II deficient for failure to allege malice.

■■ A supervisor's freedom to interfere with an employee's employment is not absolute, and at-will status does not immunize a supervisor from liability. (*Haupt v. International Harvester Co.* (N.D. Ill. 1984), 582 F. Supp. 545, 549-50.) To recover for tortious interference with contractual relations, plaintiff must show that defendant acted either without justification or with malice. *H.F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 474, 322 N.E.2d 45; see also *George A. Fuller Co. v. Chicago College of Osteopathic Medicine* (7th Cir. 1983), 719 F.2d 1326, 1333 (to state a cause of action against corporate officers for interfering with their corporate principals' contract, facts must be alleged that establish that the officers induced the breach to further their personal goals or to injure the other party to the contract and that they acted contrary to the best interests of the corporation).

■■ The plaintiff alleges in her second amended complaint:
"The defendants either knew the statements were false when they made them, or should have known the statements were false, but made no effort to determine their truth or falsity before making them."
She alleged that defendants "made these accusations intentionally and maliciously" and did so "in an effort to justify the termination of plaintiff's employment." In order to demonstrate that the statements were false and known to be false, plaintiff alleged that during the course of her employment with the Bank, she received favorable performance reviews signed by one of the individual defendants in his capacity as an officer of the Bank.

Defendants contend that the allegations that the statements were false and known to be false when made are conclusions rather than facts. These, however, are the ultimate facts in this case. As the court in *Powers v. Delnor Hospital* (1985), 135 Ill. App. 3d 317, 321, 481 N.E.2d 968, stated:
"[T]here is no other way to allege these facts. Indeed, it is directly from these facts that it is possible to infer the legal conclusion that the inducement to breach was intentional and malicious."

As in *Powers*, we find that the allegations of falsity, knowledge and malice are sufficient. We, therefore, conclude that the dismissal of count II of the first amended complaint and the refusal to grant leave to file a second amended count II were improper.

## III

■■■ The last issue is whether the count for unjust dismissal was properly dismissed on the basis that it was barred by the Act. Plaintiff argues that the Act only bars appointed high level bank officers from bringing actions for unjust dismissal. The fifth subsection states that a national bank has the power

> "*by its board of directors to appoint* a president, vice president, cashier, *and other officers*, define their duties, require bonds of them \*\*\*, *dismiss such officers or any of them at pleasure*, and appoint others to fill their places." (Emphasis added.) 12 U.S.C. §24, par. 5 (1982).

The Act bars suits for wrongful discharge because a national bank may not bargain away its right to discharge officers at pleasure. (*Kemper v. First National Bank in Newton* (1981), 94 Ill. App. 3d 169, 171, 418 N.E.2d 819.) But the dismissal at pleasure rule does not apply where the Act's requirements that the officer be appointed and dismissed by the board of directors are not met. *Wiskotoni v. Michigan National Bank-West* (6th Cir. 1983), 716 F.2d 378, 387; *Mahoney v. Crocker National Bank* (N.D. Calif. 1983), 571 F. Supp. 287, 289-91.

At this stage in the proceedings, there is nothing in the record regarding the action by the board of directors in the appointment or discharge of the plaintiff pursuant to the provisions of the Act. Therefore, the trial court erred in dismissing the count for unjust dismissal because it cannot be said as a matter of law that plaintiff was appointed or dismissed in accordance with the statute.

Accordingly, the judgment of the circuit court is affirmed in part and reversed in part, and remanded with instructions to reinstate counts II and III.

Affirmed in part; reversed in part and remanded with directions.

HARTMAN and SCARIANO, JJ., concur.